Good morning. May it please the court, my name is Rob Sines. I'm the attorney for the defendant appellant Robert E. Blunt. We have two issues to present to the court today. The first is whether or not the trial court committed reversible error by denying the motion to suppress. And secondly, whether the trial court committed reversible error by denying the defendant's request for instruction 4.9 regarding special circumstances and specifically immunity and testimony of accomplices. The facts of the case are interesting. On September 20, about 1.30 a.m., the trio of Kevin Wenig, Cindy Donahue, and Robert Blunt headed from Snohomish to Spokane. In the car was, in the console was a vial, a glass vial containing the ashes of Ms. Donahue's father. In the trunk, there was a number of firearms. There were some rifles, and in a blue Boeing bag that belonged to Mr. Blunt was a .22 pistol. They arrived in Spokane, took the Argonne exit, and Deputy Epperson saw that Mr. Blunt, who was in the right front seat, passenger seat, was not wearing the seat belt properly, so he pulled the vehicle over. He discovered that Mr. Blunt had the seat belt under his arm, which, in Deputy Epperson's opinion, was not being correctly worn. So the deputy started to prepare a ticket, and so he went back to his car. He did a check of the plates and discovered that the owner of the car, Kevin Wenig, had a suspended license. So at that immediate time, he decided to impound the vehicle. Well, did he do it then, or did he first ask Mr. Blunt for his identification? Yeah, there's a series of events with Mr. Blunt. He asked Mr. Blunt for his identification. Mr. Blunt said he did not have a driver's license. He opened up his wallet. The deputy looked inside the wallet and saw a license. I had Mr. Blunt pull it out, and it was a license that belonged to a woman who later reported it stolen. Right, and he asked, Whose is this? Mr. Blunt says, It's my girlfriend. And then, What's the name of your girlfriend? Turns out the name he gives is not the name on that license. And then he says, Oh, it really isn't my girlfriend's license. It's a friend of my girlfriend. And then, I think, he says, I decided to impound the vehicle. Is that right? Did I get the sequence correct? Not exactly. He decided that there was grounds, he had a crime, possession of another's ID, but he did not make the decision to impound the vehicle based on that. It was based on- I'm not asking what his basis was. I'm asking the sequence of events. Okay. What happened next is he went back and ran the license plates, showed that Wenning was suspended, and then he decided to impound. But he sees there's something squirrelly going on. He does. Yeah. Okay. So when, what precise moment do you think the impoundment occurred? I'm not asking you when he made a decision he was going to impound. When precisely did the factual impoundment occur, and what criteria are you using to answer my question? The precise instant that impoundment occurred is when he approached Mr. Wenning and said, Are you Mr. Wenning, are you the registered owner? And Wenning answered yes. And at that time, he made the decision to impound. I'm not asking when he made a decision, but when did the impoundment occur, and why do you conclude it was then? I mean, lots of times officers make decisions, I'm going to do something, but don't execute that until they get further information to corroborate it. So as a court, what criteria would we write that would help other courts understand when that magical moment occurs of actual impoundment? And if you're saying it's subjective, when he made the decision, that's going to run in the face of an awful lot of law that says you look at the objective performance and not the subjective opinion of officers. Right. But his testimony indicated that the vehicle was impounded from the moment that he discovered that the driver had a suspended license. What made it impounded? What happened that impounded it? Essentially, his decision. The vehicle was not impounded. So it was subjective then. Is that the decision? Yes. He didn't disable the vehicle or anything like that, but they were not free to move that vehicle from the instant that he decided it would be impounded. Well, but you're not free to move a vehicle just when you're arrested, and when you're stopped even for a turnstile. You can't use the criteria whether you're free to move the vehicle, because long before an impoundment, you're not free to move vehicles. So that can't be the criteria. Well, under Washington law, he's required to explore other alternatives, which he failed to do. So it all goes back to when the officer would testify. Well, it depends on when the impoundment occurred. Yeah, but the officer testified that he impounded the vehicle immediately upon learning that Wenig had a suspended license. And how much do we care about whether he had the right to impound it? Because what happens is he gets permission from Wenig to search the vehicle, right? Right. And he searches the vehicle. He then, I think, specifically asks for permission to search the trunk. Wenig says yes. And then the question is, does Mr. Blunt have a right of privacy to a bag that's in the trunk when permission has been given to search the trunk? So how does he have a protected right of privacy in a bag that's in a trunk that there's been a valid permission to search? Again, it's the sequence of events that flows after the unlawful decision or the unlawful impoundment of the vehicle. The sequence actually was that he made the decision, put Wenig in his patrol car, went back to the car, and then immediately saw this vial of ashes and believed that it was drugs. And then he went back and asked Wenig if he could search the car. And he said yes. So he had a consent. Yeah. It was long after, though, that the— Even if there was an impoundment, wouldn't the consent override any impoundment? No, because you need to ask for consent prior to the inventory search. That's the Washington law, as recognized by Congress. Did he at some point say to Wenig, I am impounding your vehicle, or did you just say, you're not free to leave? Honestly, I can't recall. I'm sorry. My impression is that he informed him that he was impounding the vehicle, but I can't cite a specific part of the record. If we were really going to parse it carefully, it's probably not possible. So I am going to impound it doesn't mean I have impounded it. I mean, is that right? I just don't stand here— But why do we care? Does it vitiate the consent that he has already impounded it? I think so, yes. Because? Because the Washington requires consent prior to the inventory search. So the impoundment, you can't—the driver does not consent to the impoundment. It's the subsequent inventory search. But he got the consent? After he saw what he thought was contraband. Right. When did he find—did they find some discarded marijuana nearby too? Yes. When was that found? It was Blunt and Donahue were removed from the vehicle at the time that Wenig was placed in the patrol car. They were standing over next to a fence. Blunt had some marijuana in his pocket and he flipped it over the fence. And then Donahue informed the officers of that fact as soon as they realized that they were about to be arrested. And so, yes, that was some marijuana that was in Blunt's pocket. So that was disclosed before the impoundment? I mean, that was discovered and disclosed before the impoundment? No. No, that was after. That was after another officer had arrived and these defendants were about to be taken into custody and Donahue and Wenig were already cooperating, making statements about their accomplice, Mr. Blunt. Yes, I agree, Your Honors, that the sequence of events is critical to this case. And you had one last argument about— That's about the Instruction 4.9. The state's theory of the case, in fact the argument in closing, were that the three of them were accomplices, co-conspirators in this scheme to come to Spokane and sell firearms to buy drugs. The defense attorney asked for an instruction. They focused a lot on the immunity issue. Wenig was offered immunity by a state court sheriff's deputy. He was also deputized under the FBI as well, but it was state court immunity. The judge ruled that immunity for purposes of Instruction 4.9 is a term of art and only refers to immunity from federal prosecution, not immunity from state prosecution. Was it brought out in testimony that she had been offered some sort of a deal, whether I call it immunity or not? Yes. So they knew that. Yes. When did you first explicitly make the argument that you thought 4.9 applied in your case because of the accomplice? It wasn't raised very well below. It wasn't raised at all below? It was mentioned, but not— How? Give me the language of how it was mentioned. It was just they talked about in a conversation the word accomplice came up. Because that's part of the title of 4.9. No, they were actually referring to the fact that they were accomplices, but it was just in a single sentence. All the rest of them. So you—do you argue then it was not raised below, or do you argue that it was? I'm trying to argue that it was. Fine. Accepted. I would have preferred— You would have preferred it would have been raised more clearly. Exactly. Why don't we hear from the other side, and then we'll give you a chance to respond. Thank you. Good morning, Your Honors. May it please the Court, my name is Matt Duggan. I represent the United States in this matter. Your Honor, there are two issues, as Mr. Sines indicated. One is the district court's denial of the motion to suppress in this case, and I want to start this argument at the same place that I finish it and say that it's the government's position that the consent in this case given by the registered owner and driver of the vehicle, Kevin Winning, alleviates all of the other issues that have to do with this case. We can talk about when the impoundment occurred, when the deputy made that decision for an impoundment, and when an actual impoundment occurred, but when we get down to the brass tacks in this case, Kevin Winning gave permission to search not only the interior of his car, but law enforcement asked him separately and again if they could search the locked trunk of the vehicle, and Mr. Winning at that point again gave his consent to search the trunk of the vehicle. And that consent was asked for and received just right after the initial stop almost, wasn't it? I believe it was very soon after the initial stop. The initial consent. Correct. And as far as the sequence of events, I believe the deputies or the law enforcement officers had made a decision that this vehicle was going to be impounded because Kevin Winning had a suspended driver's license, but before that could take place, officers asked Kevin Winning if he would consent to the search, and he did. We may not have to get to what is the impoundment because of the consent issue. But just putting that aside for a minute, what would be your definition of when an impoundment occurs, and do you think it did occur in this case and when? Your Honor, I don't think an impoundment did occur in this case, and I don't think it occurred because once Mr. Winning had given consent to search that vehicle, impoundment is off the table and doesn't occur. So by him giving, once he gives his consent, we're out of the area of a lawful impound or a search under a lawful impound, and we move into the consent realm of this search. I assume after the gun is discovered and so on, the vehicle probably was impounded. It was, Your Honor. So eventually it gets towed off to the lot. It was, Your Honor. So at least when it was towed off to the lot, you would say it was impounded then, even though that was pursuant to a consent to search. I'll agree with that, yes, Your Honor. I think that's accurate. So the key moment for impoundment was what, when the tow truck showed up? Yes, Your Honor. That's after, of course, the decision was made to impound it. Of course. And also after consent was given. Is impoundment a, we may not, as you say, this all may be unnecessary to even get to, but is impoundment decided objectively or subjectively? I believe it's decided objectively. Your Honor, I want to move on to the second argument, which is the denial of the 4.9 jury instruction, which deals with letting a jury know the flavor of a particular witness's testimony, if that witness has been given some sort of immunity or some sort of other government promise in this case. And it's important to note that the district court, when taking a look at this issue, and they looked at it several times throughout the trial on several recesses during the trial, and this discussion came up repeatedly, but the bottom line is the district court in this case did make a finding that there was no immunity given in this case, and therefore instruction 4.9 should not be given. When we take a look at instruction 4.9 and the case law that surrounds that instruction, we look to the Davis case, and basically what the Davis case said is that if the strength of the United States case relies so heavily upon this one particular witness, this instruction should be given. But in this case, we have a different situation, because one, the court made a factual finding that he had not been given any immunity, and two, there was other evidence in this case aside from the testimony of Kevin Winnig to help the United States prove this case, and that evidence was the blue Boeing bag containing the firearm, the loaded ammunition magazines, and a business card of a person by the name of Thomas Conrad, who the defendant, Mr. Blunt, asked local law enforcement on the scene to contact. Officers did contact Thomas Conrad, and Thomas Conrad did confirm that he had been working with Mr. Blunt. What part of Mr. Winnig's testimony is Mr. Blunt trying to undermine by his challenge to credibility? Your Honor, I'm not entirely certain, and I can tell you as the district court noted, Mr. Winnig's testimony was found to be not credible, both by the judge, and I think both counsel would agree after he had testified that his testimony was not credible in any form of the word. And for that reason, the United States, when making its closing arguments, stayed away from Mr. Winnig because his testimony was all over the board in this case. We have a finding by the district court that he was not credible, don't we? That's correct, Your Honor. We have a statement in the trial level, maybe it was at oral argument, I mean closing argument, by both sides that he wasn't credible, or at least the refusal to rely on him. That's correct, Your Honor. And one other point that I forgot to make earlier is that when this argument was taking place over the issue of giving the 4.9 instruction, defense counsel at the trial level agreed that there was no immunity given and that this instruction inasmuch was not able to be given in this case. So is that an invited error defense that you're asserting here? Well, I don't know. If it was error, if it was error. I don't know if it's invited error, but it's an admission by the defense counsel to see the case as it was that this person had not been given any immunity and that that term should not be used in the closing arguments of the trial. Did the defendant ever argue below that 4.9 should be given because of the accomplice relationship? Your Honor, I don't believe they argued that below. It's been raised at this level, but not below. Your Honor, in closing, with the first issue, it's the government's position that the consent resolves the issues of the search. With the second issue, we have a finding by the district court that there was not any promise or benefit given to Mr. Wenning that should be mentioned to the jury. If the court doesn't have any questions, I'll take my seat. Okay. Thank you. Mr. Simes, would you like a minute? Yes. With regard to the immunity instruction, it doesn't make a difference if he's granted immunity from state prosecution or federal prosecution in terms of the credibility of the witness, the inherent unreliability of the testimony. That issue is your first impression. Let me ask you this. One possibility, of course, is if it's error, that it's harmless. What part of his testimony is your client seeking to undermine? Well, the judge thought that they completely destroyed his credibility. No, no, I'm not asking you that. Obviously, there's some part of his testimony that's damaging to your client that you wanted to undermine. So what is that testimony? That the guns in the trunk belonged, all of them belonged to Blunt and Wenning knew nothing about them. And what evidence do we have that establishes ownership by Mr. Blunt of the pistol? Because it's the pistol that's in the bag that turns out to be the basis for the felon in possession. Yes, and there's no evidence, apart from the fact that it's in the bag, that it belonged to Blunt. Blunt said it wasn't his. Wenning says, it's not mine. Donahue says, I don't know anything about guns. Do we have any evidence as to who the bag belonged to? The bag, yes, there is evidence that the Boeing bag belonged to Blunt. I see, but he says, it was my bag, but whatever was in it wasn't mine. Well, everything, the gun and the bullets were not mine, everything else is. So the bag belongs to me, everything in the bag belongs to me, except for the gun and the bullets. Yes, sir. I got it. Okay, thank you. Thank you. I thank both sides for your arguments. The United States v. Blunt is now submitted.
judges: Ebel, Fletcher, Rawlinson